**PEPSICO, INC., a corporation,**
**Plaintiff,**

v.

**Martin REYES d/b/a Concha's**
**Produce, an individual,**
**Defendant.**

**No. SACV98–1137–GLT (EEx).**

United States District Court,
C.D. California,
Southern Division.

Feb. 3, 1999.

Joan Kupersmith Larkin, Kenneth L. Wilton, Small Larkin, LLP, Los Angeles, CA, for plaintiff PepsiCo, Inc.

David C. Hilliard, Mark V.B. Partridge, Jonathan S. Jennings, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, for Defendant.

### FINAL JUDGMENT

TAYLOR, District Judge.

### I. *INTRODUCTION*

Plaintiff, PepsiCo, Inc. ("PepsiCo"), brought this Action on September 29, 1998, against defendant, Martin Reyes d/b/a Concha's Produce ("Concha's Produce"), to prevent the unlawful importation and sale of foreign manufactured soft drinks bearing PepsiCo's PEPSI trade-

marks. The parties stipulate to the following findings of fact and conclusions of law, and consent to entry of a permanent injunction as set forth below. Accordingly, the court enters the following:

## II. *FINDINGS OF FACT*

PepsiCo is engaged in the manufacture, promotion, sale and distribution of soft drinks under its famous trademarks PEPSI–COLA, PEPSI, its red, white and blue logo, and combinations of variations on this logo with PEPSI–COLA and PEPSI throughout the United States and abroad ("PEPSI marks").

PepsiCo has registered the PEPSI marks in the United States Patent and Trademark Office. The registrations with numbers 824,150; 824,151; 824,153; 956,179; 957,017; and 1,747,889, are valid and subsisting, are owned by PepsiCo, and have become incontestable in accordance with 15 U.S.C. §§ 1065 and 1115(b). The PEPSI marks with registration numbers 1,795,191 and 1,796,481 also are valid and subsisting and are owned by PepsiCo.

PepsiCo appoints exclusive bottlers for specific territories in order to maintain and enhance the quality and goodwill associated with the PEPSI soft drinks ("PEPSI products") within the particular territory. The PEPSI products are bottled and distributed in the United States by PepsiCo, its wholly owned subsidiaries, and by authorized bottlers pursuant to Exclusive Bottling Appointment agreements which authorize local bottlers, and no one else, to bottle and distribute PEPSI products in their respective territories.

Plaintiff similarly has appointed local bottlers to bottle and distribute PEPSI products in Mexico within the particular territory. The PEPSI products bottled in Mexico are not authorized or intended for exportation out of Mexico or for importation into and sale or distribution in the United States.

Concha's Produce has been engaged in the sale of PEPSI products which were bottled in Mexico and intended for sale in Mexico which were then imported into the United States without PepsiCo's authorization ("Mexican products"). PepsiCo never authorizes the importation into, or the sale in the United States of Mexican products. Although the Mexican products originally were authorized by PepsiCo for sale in Mexico, the Mexican products sold by Concha's Produce in the United States have certain material differences from domestic PEPSI products sold by PepsiCo and its domestic bottlers.

In particular, the Mexican products have the following material differences: (1) they contain inferior paper labels that improperly report nutrition and ingredient information; (2) they do not comply with the labeling standards followed by PepsiCo and its authorized bottlers in the United States; (3) they are inconsistent with PepsiCo's marketing, advertising and promotional efforts; (4) they do not inform purchasers of or allow purchasers to participate in promotions which are authorized by PepsiCo based on the purchase of specially-marked PEPSI products authorized by PepsiCo for sale only in the United States; (5) they conflict with the bottle return policies of PepsiCo and its authorized bottlers; (6) they bear writing on their bottles and bottle caps in Spanish which many customers in the United States do not understand; (7) they use bottles that are of a size and shape which are not available for sale in the United States; (8) they do not comply with PepsiCo's quality control standards and thereby undermine PepsiCo's reputation for producing quality products because there is a risk of leakage, loss of carbonation and general deterioration to the Mexican products due to the hazards and delay inherent in shipping the products outside their designated area of sale; and (9) they do not indicate properly PepsiCo's ownership of U.S. Trademark registrations for its PEPSI marks with the use of a proper registration symbol.

These differences in labeling, packaging, marketing and quality control methods are material and are likely to cause confusion and dissatisfaction among retailers and consumers to the detriment of PepsiCo and its authorized domestic bottlers.

## III. *CONCLUSIONS OF LAW*

PepsiCo's incontestable United States Trademark Registrations conclusively establish its ownership of and exclusive rights in the PEPSI marks covered by these registrations for soft drinks in the United States. 15 U.S.C. §§ 1065 and 1115(b); *Park 'N Fly v. Dollar Park and Fly Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). PepsiCo's other registrations of the PEPSI marks constitute *prima facie* evidence of PepsiCo's exclusive right to use those PEPSI marks in the United States. 15 U.S.C. § 1115(a).

■ The sale of the Mexican products violates the Lanham Act, as well as California's unfair competition statute, if it is likely to confuse consumers as to source, nature, or approval for sale, of these products. 15 U.S.C. §§ 1114(1)(a), 1125(a) (1988); Cal.Bus. & Prof.Code §§ 17200 *et seq.*; *Grupo Gamesa S.A. v. Dulceria El Molino Inc.*, 39 U.S.P.Q.2d 1531, 1533 (C.D.Cal.1996); *PepsiCo, Inc. v. Torres*, 27 U.S.P.Q.2d 1948, 1950 (C.D.Cal.1993). As products that are intended for sale abroad and imported into the U.S. market to compete with the sale of products authorized for sale in the U.S., the Mexican products are gray market products. The sale of gray market products under the same trademarks as the authorized products is likely to confuse customers if these gray market products differ materially from the authorized products. *Grupo Gamesa S.A. v. Dulceria El Molino Inc.*, 39 U.S.P.Q.2d 1531, 1533 (C.D.Cal.1996); *PepsiCo, Inc. v. Torres*, 27 U.S.P.Q.2d 1948, 1950 (C.D.Cal. 1993); *Martin's Herend Imports v. Diamond & Gem Trading*, 112 F.3d 1296, 1302 (5th Cir.1997).

The threshold of materiality "is always quite low." *Societe Des Produits Nestle,* *S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 641 (1st Cir.1992). "[T]he existence of any difference between registrant's product and the allegedly infringing gray good that consumers would likely consider to be relevant when purchasing a product creates a presumption of consumer confusion sufficient to support a Lanham Trade Mark Act claim." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d at 641; *See Grupo Gamesa S.A. v. Dulceria El Molino Inc.*, 39 U.S.P.Q.2d 1531, 1533 (C.D.Cal.1996).

■ In the present action, there are material differences between domestic PEPSI products and the Mexican products. For example, in contrast to the packaging and labeling on the authorized PEPSI products, the labels on the Mexican products do not comply with the Food and Drug Administration regulations and those of the state of California. 21 C.F.R. § 101.1 – 101.108; Cal.Code Regs. tit. 17 § 10862; *Grupo Gamesa S.A. v. Dulceria El Molino Inc.*, 39 U.S.P.Q.2d 1531, 1533 (C.D.Cal.1996) (failure to follow FDA labeling requirements is an actionable material difference); *Helene Curtis v. National Wholesale Liquidators, Inc.*, 890 F.Supp. 152, 159 (E.D.N.Y.1995) (granting preliminary injunction against importation of unauthorized products because, among other reasons, the goods failed to comply with FDA labeling requirements); *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 753 F.Supp. 1240, 1244 (D.N.J.), *aff'd*, 935 F.2d 1281, 19 U.S.P.Q.2d 1468 (3d Cir.1991) (unauthorized product differed materially because, among other things, it failed to meet FDA labeling requirements).

The use of Spanish on the Mexican products also is a material difference. *PepsiCo, Inc. v. Nostalgia Products Corp.*, 18 U.S.P.Q.2d 1404, 1405, 1991 WL 113161 (N.D.Ill.1991). The other differences between the Mexican products and the authorized PEPSI products, such as the differences in quality control, failure to comply with U.S. promotional efforts

by PepsiCo, interference with PepsiCo's advertising and promotional strategies, and failure to use the proper trademark registration symbols, also are material and demonstrate that there is a likelihood of confusion and deception concerning the nature and origin of the goods. *See PepsiCo, Inc. v.. Torres,* 27 U.S.P.Q.2d 1948, 1950 (C.D.Cal.1993); *see also Pepsico, Inc. v. Giraud,* 7 U.S.P.Q.2d 1371, 1372–73, 1988 WL 391511 (D.P.R.1988); *Martin's Herend Imports v. Diamond & Gem Trading,* 112 F.3d 1296, 1302 (5th Cir. 1997).

Concha's Produce's distribution and sale of Mexican products in the United States without PepsiCo's consent results in irreparable injury to PepsiCo because such sales create confusion and dissatisfaction among retailers and customers to the detriment of PepsiCo's domestic goodwill. Similarly, Concha's Produce's sale of Mexican products also injures and tarnishes the goodwill and reputation of PepsiCo as symbolized in its famous PEPSI marks, in violation of the federal anti-dilution law. 15 U.S.C. § 1125(c); *see Anheuser–Busch, Inc. v. Andy's Sportswear, Inc.,* 40 U.S.P.Q.2d 1542 (N.D.Cal.1996). Finally, Concha's Produce's conduct also violates the California Anti–Dilution law. Cal.Bus. & Prof.Code § 14330; *Grupo Gamesa S.A. v. Dulceria El Molino Inc.,* 39 U.S.P.Q.2d 1531, 1533 (C.D.Cal.1996); *see also, Guess? Inc. v. Tres Hermanos,* 993 F.Supp. 1277, 45 U.S.P.Q.2d 1179, 1185 (C.D.Cal.1997). As a matter of law, therefore, the sale of the Mexican products in the United States without PepsiCo's consent constitutes trademark infringement, unfair competition, and dilution.

Trademark infringement, unfair competition, and dilution by their very nature result in irreparable injury since the attendant loss of goodwill, reputation and business cannot adequately be quantified and the trademark owner cannot adequately be compensated. *Grupo Gamesa S.A. v. Dulceria El Molino Inc.,* 39 U.S.P.Q.2d 1531, 1534 (C.D.Cal.1996);

*PepsiCo, Inc. v. Torres,* 27 U.S.P.Q.2d 1948, 1950 (C.D.Cal.1993); *Porsche Cars North America Inc. v. Manny's Porshop Inc.,* 972 F.Supp. 1128, 43 U.S.P.Q.2d 1475, 1479 (N.D.Ill.1997); *International Kennel Club v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir.1988).

For the above reasons, PepsiCo is entitled to injunctive relief. The sale of Mexican products is a violation of the Lanham Act and the laws of California, and causes irreparable injury to the goodwill represented by the famous PEPSI marks and to the reputation and business of PepsiCo and its authorized bottlers in the United States.

## IV. *ORDER*

It is ORDERED, ADJUDGED and DECREED that:

This Court has jurisdiction over the parties and subject matter of this action;

1. Defendant, his co-owners, partners, subsidiaries, affiliated companies, and the officers, directors, agents, partners, servants, employees, and attorneys of all of them and all others in active concert or participation with defendant, are permanently enjoined and restrained from importation into, and the dealing, marketing, sale or distribution in the United States of soft drinks manufactured or bottled in Mexico bearing PepsiCo, Inc.'s PEPSI marks; and

2. Defendant shall cooperate with PepsiCo, Inc. in providing deposition and trial testimony about his knowledge of the importation into, and the sale and distribution in the United States of Mexican products by third parties.

SO ORDERED AND ADJUDGED.