**BAYER CORPORATION, Plaintiff,**

v.

**CUSTOM SCHOOL FRAMES, LLC and Dale J. "Jerry" Autin, Defendants.**

**No. CIV.A.02–2604.**

United States District Court, E.D. Louisiana.

April 16, 2003.

---

Mark P. Seyler, Barkley & Thompson, New Orleans, LA, for Defendants, Custom School Frames, LLC and Dale J. Autin.

Mary Ellen Roy, T.A., J. Michael Monahan, II, Phelps Dunbar LLP, New Orleans, Raymond I. Geraldson, Jr., Jonathan S. Jennings, Thad Chaloemtiarana, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, for Plaintiff, Bayer Corporation.

## FINAL JUDGMENT

MCNAMARA, District Judge.

### I. *INTRODUCTION*

Bayer Corporation brought this Action on August 22, 2002, against defendants, Custom School Frames, LLC, ("CSF") and Dale J. Autin, to prevent the unlawful sale of foreign manufactured flea control preparations bearing Bayer's ADVANTAGE mark and the prominent use of this mark on Defendants' *no-fleas.com* web site. The parties stipulate to the following findings of fact and conclusions of law, and consent to entry of a permanent injunction as set forth below. Accordingly, the court enters the following:

### II. *FINDINGS OF FACT*

Bayer Corporation is an Indiana corporation with its principal place of business in Pittsburgh, Pennsylvania and is a wholly-owned subsidiary of Bayer AG, an entity formed under the laws of, and based in, Germany. Bayer AG and Bayer Corporation are collectively referred to herein as "Bayer."

Bayer AG manufactures animal flea control preparations, among other goods, and markets these products outside the United States. Bayer Corporation markets the animal flea control preparations it receives from Bayer AG solely within the United States. Bayer Corporation has made con-

tinuous use of the trademark ADVANTAGE ("ADVANTAGE mark") in connection with the sale and advertising of animal flea control preparations ("ADVANTAGE products"). Bayer Corporation also offers a variety of computer services in connection with the ADVANTAGE ADVISORY mark.

Bayer Corporation owns a federal registration for its ADVANTAGE mark in the United States Patent and Trademark Office, namely, Registration No. 2,044,733 for ADVANTAGE for "flea control preparations for dogs and cats," and Registration No. 2,474,534, for ADVANTAGE ADVISORY for "computer services, namely, providing an electronic mail newsletter in the field of pet care, veterinary medicine and veterinary technology." Both registrations are valid and subsisting, and Registration No. 2,044,733 is incontestable in accordance with 15 U.S.C. § 1064.

Bayer Corporation has sold tens of millions of dollars worth of animal flea control preparations under the ADVANTAGE mark throughout the United States and has expended tens of millions of dollars to advertise and promote these ADVANTAGE products and the ADVANTAGE mark. As a result of Bayer Corporation's extensive sales, promotion and advertising, the ADVANTAGE mark has become famous, and represents an extraordinarily valuable goodwill owned by Bayer Corporation.

Bayer AG tailors the manufacture of ADVANTAGE products to suit the requirements, laws and regulations of specific geographic regions or countries to reflect the differences among these areas in, among other things, environmental laws and regulations, language, climate, local addresses and telephone numbers. Bayer AG appoints distributors for specific geographic regions, including the regions of Australia, and the United Kingdom and Ireland, and for specific countries, such as the United States, in order to maintain the quality associated with ADVANTAGE products within each particular region or country.

Bayer AG prohibits the sale of the ADVANTAGE products by such distributors or agents outside of their designated region or country. The ADVANTAGE products sold in the region incorporating the United Kingdom and Ireland, and the ADVANTAGE products sold in the Australia region, are not authorized or intended for exportation out of these areas, or for importation into, or sale or distribution in, the United States.

In the United States, Bayer Corporation sells the ADVANTAGE products only to authorized and licensed veterinarians for resale to their pet owner clients. Bayer Corporation offers these authorized veterinarians information and training on the safe and appropriate use of the ADVANTAGE products.

Since 1996, Bayer Corporation has advertised its ADVANTAGE products through, and provided useful dosage and safety information to pet owners on, its Internet web site located at *www.no-fleas.com,* but Bayer does not sell the ADVANTAGE products through the Internet.

Defendants have advertised and sold within the United States, and within this District, two types of animal flea control preparations bearing the ADVANTAGE mark, which are manufactured by Bayer AG for sale and use outside of the United States, namely, one type manufactured and packaged for sale exclusively in the United Kingdom and Ireland (the "U.K. Product"), and another type manufactured and packaged for sale in the Australia region (the "Australian Product") (collectively, "Foreign Product"). As more thoroughly discussed below, the Foreign Product is not authorized for sale or use in the United States.

Defendant CSF has used an Internet web site located at the domain name *www.no-fleas.com* to advertise and sell the Foreign Product. Defendant CSF, without authorization from Bayer, registered and first used the *no-fleas.com* domain name well after Bayer Corporation's registration and use of its *nofleas.com* domain name. Also without Bayer's authorization, Defendant CSF has made prominent use of the ADVANTAGE mark on the *no-fleas.com* web site, including the unauthorized use of ADVANTAGE FLEA CONTROL as a title of the web site and as a trade name, the unauthorized portrayal of the distinctive packaging of the ADVANTAGE products, and the unauthorized use of the putative copyright notice "© 2000 Advantage Flea Control." Defendant CSF also used, without Bayer's permission, Bayer Corporation's ADVANTAGE mark in the computer code for their *no-fleas.com* web site to obtain a high placement in Internet search results when consumers conduct Internet searches for, among other things, purchasing or safety information about the ADVANTAGE products using the keywords or search terms "ADVANTAGE" or "ADVANTAGE FLEA CONTROL." Defendant CSF has without Bayer's authorization, paid at least one Internet search engine to secure highly prominent placement for its *no-fleas.com* web site in search results when consumers conduct Internet searches for, among other things, purchasing or safety information about the ADVANTAGE products, and using the keywords or search terms "ADVANTAGE" or "ADVANTAGE FLEA CONTROL."

Defendants are not licensed veterinarians, and the Foreign Product is sold directly to consumers without offering a consultation with a veterinarian concerning the consumers' safe use of these products on the dog or cat in question.

The Foreign Product also has the following material differences from the ADVANTAGE product authorized by Bayer for sale in the United States:

(1) it has not been registered with the United States Environmental Protection Agency ("EPA") and does not feature an EPA registration number on the label; therefore the Foreign Product constitutes an unregistered pesticide in violation of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 et. seq., and the unauthorized sale of the Foreign Product harms consumers by undermining the EPA's ability, through FIFRA's requirements, to provide consumers with appropriate health and safety guidelines for use of the pesticides sold in the United States;

(2) the Foreign Product has not been registered with the Louisiana Department of Agriculture and Forestry ("LDAF"), and does not feature certain statutorily required information on the labels; therefore, the Foreign Product constitutes an unregistered pesticide in violation of the Louisiana Pesticide Law ("LPL"), La.Rev.Stat. Ann. 3:3201, *et seq.,* and the unauthorized sale of this Foreign Product harms the public by undermining the LDAF's ability, through LPL's requirements, to provide Louisiana consumers with appropriate health and safety guidelines for the use of pesticides in Louisiana. *See e.g.,* La.Rev. Stat. Ann. § 3:3221;

(3) the Australian Product does not include safety information pertaining to both human and animal first aid;

(4) the U.K. Product does not identify any emergency or customer service telephone numbers and the Australian Product packaging identifies a cus-

tomer service telephone number that is inaccessible from the United States;

(5) the Foreign Product is sold through the Internet "over-the-counter" which does not permit veterinarians the opportunity to correctly prescribe dosages based on a personal evaluation of the dog or cat and to determine whether a potential health risk to the pets may exist;

(6) there are different instructional pamphlets enclosed in the Foreign Product that, among other things, contain different statements from those in the authorized ADVANTAGE product sold in the United States about the efficacy of this product after shampooing or washing the animals;

(7) the marketing of the Foreign Product conflicts with Bayer Corporation's return policy for the ADVANTAGE products;

(8) the Foreign Product is not subject to Bayer Corporation's quality control procedures for shipment and storage of the ADVANTAGE products and therefore is subject to damage;

(9) the Foreign Product is not subject to the labeling, marketing or advertising plans and procedures followed by Bayer Corporation in the United States;

(10) the Foreign Product does not inform consumers of, or allow them to participate in, Bayer Corporation's promotions meant for authorized ADVANTAGE products sold in the United States;

(11) the Foreign Product uses metric measurements (*e.g.*, kilograms), for dosage instructions, pet weight and other matters of consumer usage and pet safety as opposed to the standard United States system of measurement (*e.g.*, pounds).

(12) the U.K. Product has a removable, unauthorized label affixed to its packaging that obscures the ADVANTAGE mark;

(13) the Australian Product does not identify the country where the product was manufactured in violation of U.S. Customs regulations and the LPL;

(14) the Foreign Product identifies a foreign office location for Bayer AG instead of Bayer Corporation's location in Shawnee Mission. Kansas;

(15) the Foreign Product bears different spellings for certain words based on regional language differences (*e.g.*, "Poisons Information *Centre*" vs. "Poison Control *Center*");

(16) the Foreign Product is not sold pursuant to the same limitations of liability and warranty provisions as ADVANTAGE products legitimately sold in the United States; and,

(17) the Australian Product bears the following trademark notice: "Advantage ™ is a trademark of Bayer AG", which does not indicate Bayer Corporation's ownership of a registered mark in the United States, and could be interpreted as limiting Bayer Corporation's right to obtain relief in accordance with Section 29 of the Lanham Act. 15 U.S.C. § 1111.

## III. *CONCLUSIONS OF LAW*

Bayer Corporation's incontestable federal trademark registration for the ADVANTAGE mark conclusively establishes its ownership of, the validity of, and its exclusive right to use this mark in connection with flea control preparations for dogs and cats in the United States. 15 U.S.C. §§ 1065 and 1115(b); *Park 'N Fly v. Dollar Park and Fly Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). The United States service mark registration for the ADVANTAGE ADVISORY mark constitutes *prima facie* evidence of Bayer

Corporation's ownership of, the validity of, and its exclusive right to this mark for the computer services covered by this registration in the United States. 15 U.S.C. § 1057(b).

■ The sale of gray market goods such as the Foreign Product violates the Lanham Act, as well as the laws of Louisiana, because it is likely to cause consumer confusion as to the source. nature, or approval of these products. 15 U.S.C. §§ 1114(1)(a), 1125(a); La.Rev.Stat. Ann. §§ 51:1401 *et seq.; cf. Prudhomme v. Procter & Gamble Co.*, 800 F.Supp. 390, 395 (E.D.La.1992). The sale of gray market products under the same trademarks used in connection with authorized domestic products is likely to confuse customers if these gray market products differ materially from the authorized products. *See Martin's Herend Imports v. Diamond & Gem Trading*, 112 F.3d 1296, 1302 (5th Cir.1997); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 638 (1st Cir.1992) ("the unauthorized importation and sale of materially different merchandise violates Lanham Trade–Mark Act section 32 because a difference in products bearing the same name confuses consumers and impinges on the local trademark holder's goodwill").

■ The threshold for determining whether gray market products differ materially from the authorized domestic product "is always quite low." *Societe Des Produits Nestle, S.A.*, 982 F.2d at 641 ("[t]hus, when dealing with the importation of gray goods, a reviewing court must necessarily be concerned with subtle differences, for it is by subtle differences that consumers are most easily confused"); *Martin's Herend*, 112 F.3d at 1301–2 (*citing Societe Des Produits Nestle, S.A.* with approval). "[T]he existence of any difference between registrant's product and the allegedly infringing gray good that consumers would likely consider to be rele-

vant when purchasing a product creates a presumption of consumer confusion sufficient to support a Lanham Trade Mark Act claim." *Societe Des Produits Nestle*, 982 F.2d at 641. *See Grupo Gamesa S.A. v. Dulceria El Molino Inc.*, 39 U.S.P.Q.2d 1531, 1533, 1996 WL 443659 (C.D.Cal. 1996).

■ In the present action, there are many material differences between domestic ADVANTAGE products and the Foreign Product. For example, in contrast to the packaging and labeling on the authorized domestic ADVANTAGE products, the labels on the Foreign Product do not feature an EPA registration number on the label and therefore violate FIFRA. The Foreign Product also does not comply with LDAF requirements and therefore constitutes an unregistered pesticide in violation of the LPL. The failure to comply with such federal and state laws and regulations constitutes a material difference. *See Helene Curtis v. National Wholesale Liquidators, Inc.*, 890 F.Supp. 152, 159 (E.D.N.Y.1995) (granting preliminary injunction against importation of unauthorized products because, among other reasons, the goods failed to comply with FDA and New York labeling requirements); *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 753 F.Supp. 1240, 1244 (D.N.J.), *aff'd*, 935 F.2d 1281, 19 U.S.P.Q.2d 1468 (3d Cir. 1991) (unauthorized product differed materially because, among other things, it failed to meet FDA labeling requirements); *Grupo Gamesa S.A.*, 39 U.S.P.Q.2d at 1533 (failure to comply with the regulations of United States Customs, the State of California and the FDA).

The Foreign Product also is not distributed through veterinarians which is an important quality control measure that constitutes a material difference. *See Philip Morris Inc. v. Allen Distributors, Inc.*, 48 F.Supp.2d 844, 853 (S.D.Ind.1999) (quality

control provisions are a material difference). Even the use of British English spellings on the Foreign Product instead of American English spellings is a material difference. *Ferrero U.S.A., Inc.*, 753 F.Supp. at 1244, 1247 (D.N.J.1991).

█ The likelihood of confusion caused by these material differences provides a basis for finding trademark infringement and unfair competition under federal and Louisiana law. Similarly, the sale of the materially different Foreign Product also injures and tarnishes the reputation of Bayer Corporation and the goodwill in its famous ADVANTAGE mark in violation of the federal and Louisiana anti-dilution laws. 15 U.S.C. § 1125(c); La.Rev.Stat. Ann. § 51:223.1. *See Southeastern Louisiana Entertainment v. Hollywood Entertainment*, 56 U.S.P.Q 2d 1688, 1692 (E.D.La.2000) (dilution through tarnishment under federal statute); *see also Prudhomme v. Procter & Gamble Co.*, 800 F.Supp. 390, 395 (E.D.La.1992).

█ The prominent use of the ADVANTAGE mark on the *no-fleas.com* web site also creates likelihood of confusion under federal and state law. *Bernina of America v. Fashion Fabrics International*, 57 U.S.P.Q.2d 1881, 1882–84 (N.D.Ill. 2001) (enjoining prominent use of marks on web site by independent dealer). Similarly, the use of the ADVANTAGE mark in the metatags for Defendants' website creates initial interest confusion. *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036, 1062 (9th Cir. 1999); *Promatek Industries v. Equitrac Corp.*, 300 F.3d 808, 812–13 (7th Cir.2002). In *Brookfield*, the court ordered the district court to enjoin the defendant's use of the mark MOVIE–BUFF, which was similar to plaintiff's MOVIEBUFF mark, in its metatags because such use would result in initial interest confusion amongst consumers. The court found that this confusion existed "even where people realize, imme-

diately upon accessing 'movie-buff.com', that they have reached a site operated" by defendant and not plaintiff. *Id.* at 1057. This is because the defendant "will still have gained a customer by appropriating the goodwill" that plaintiff has developed in the mark. *Id.*

Here, the use of the mark ADVANTAGE in the metatags for the *no-fleas. com* web site also constitutes an appropriation of goodwill and creates initial interest confusion. *See also Bernina of America*, 57 U.S.P.Q.2d at 1883–84, (N.D.Ill.2001) (use of mark in code enjoined). The registration of the mark as a search term and code with Internet search engines also leads to confusion. *See Bernina of America*, 57 U.S.P.Q.2d at 1882–1884 (court ordered defendant to reregister web site with all known Internet search engines); *DeVry/Becker Educational Development Corp. v. Totaltape, Inc.*, 2002 WL 99743 at *2–3 (N.D.Ill.) (defendant enjoined from use of mark "in connection with the retrieval of data or information (including the use of such terms as a keyword or keywords in pay-for-placement or pay-for-rank search engines), or in connection with the advertising or promotion of [defendant's] goods, services, or websites"). The confusion over the use of the ADVANTAGE mark on the web site, including the use in metatags and as search terms with Internet search engines, is exacerbated by the use of the *no-fleas.com* domain name which is nearly identical to Bayer Corporation's *nofleas.com* domain name.

█ As a matter of law, therefore, the sale of the Foreign Product in the United States without Bayer Corporation's consent constitutes trademark infringement, unfair competition, and dilution through tarnishment. The use of ADVANTAGE in connection with the *no-fleas.com* web site also constitutes trademark infringement and unfair competition as a matter of law.

Trademark infringement, unfair competition, and dilution by their very nature result in irreparable injury since the attendant loss of goodwill, reputation and business cannot adequately be quantified and the trademark owner cannot adequately be compensated. *Miss Universe, Inc. v. Pitts,* 714 F.Supp. 209, 219 (W.D.La.1989) ("trademark cases involve a unique threat of irreparable injury"); *PepsiCo, Inc. v. Reyes,* 50 U.S.P.Q.2d 1696, 1698, 70 F.Supp.2d 1057 (C.D.Cal.1999). *See also Marker Intern. v. deBruler,* 635 F.Supp. 986, 1002–3 (D.Utah 1986). *aff'd* 844 F.2d 763 (10th Cir.1988).

The importation and sale of the Foreign Product and the prominent use of the ADVANTAGE mark on the *no-fleas.com* web site are violations of the Lanham Act and the laws of the State of Louisiana, and cause irreparable injury to the goodwill symbolized by the famous ADVANTAGE mark as well as to the business reputation of Bayer Corporation. For the above reasons, Bayer Corporation is entitled to permanent injunctive relief.

## IV. *ORDER*

It is ORDERED, ADJUDGED and DECREED that:

1. This Court has jurisdiction over the parties and subject matter of this action and shall retain jurisdiction over this Final Judgment to ensure compliance with its terms;

2. Custom School Frames, LLC, and Dale J. Autin, their co-owners, partners, subsidiaries, and affiliated companies, the successors and assigns of said companies and individuals, and the officers, directors, agents, partners, servants, employees, and attorneys of all of them and all others in active concert or participation with them, are permanently enjoined and restrained from: (a) using the ADVANTAGE mark, any mark similar thereto, or any other mark owned by Bayer Corporation, in connection with the importation, sale, distribution, advertising or promotion of any products or services; (b) selling ADVANTAGE products through any and all channels of trade including but not limited to the Internet; (c) using the ADVANTAGE mark, any mark similar thereto, or any other mark owned by Bayer Corporation, on or in connection with or as part of any web site, metatags or other computer code or otherwise in connection with the retrieval of data or information (including without limitation the use of such terms as keyword or keywords in pay-for-placement or pay-for-rank search engines) or in connection with the advertising or promotion of any goods, services or web sites; (d) reproducing or otherwise using any graphics, images or other copyrightable material owned by Bayer Corporation; (e) registering or using any domain names similar to the *nofleas.com* domain name, the ADVANTAGE mark, or any other mark or domain name owned by Bayer Corporation; and (f) committing any act that dilutes or tarnishes Bayer Corporation's ADVANTAGE mark or tarnishes or injures Bayer Corporation's business reputation;

3. Defendants shall transfer ownership and possession of the *no-fleas.com* domain name to Bayer Corporation within ten (10) days of the entry of this order by ensuring that all maintenance fees are paid through the date of such transfer to Bayer Corporation. completing all forms necessary to achieve this transfer, and working with Bayer Corporation until this transfer is complete; and,

4. Within thirty (30) days of this order, Defendants shall request the removal of any and all entries, records and registrations of the *www.no-fleas.com* web site, the ADVANTAGE mark and any search terms and keywords associated therewith, with all Internet search engines previously

identified and agreed upon in writing by the parties.

**SO ORDERED AND ADJUDGED.**