**MOROCCANOIL, INC., a California corporation, Plaintiff,**

v.

**PERFUMES WORLD COM, INC. d/b/a "1–Perfumes", a New Jersey corporation, and Does 1–50, inclusive, Defendant.**

**CASE No. CV16–03541–JFW–JC**

United States District Court, C.D. California, Western Division.

Signed 02/10/2017

Eric Steven Engel, Heather Lynn Laird, Mark D. Kremer, Zachary T. Page, Gal Gressel, Conkle Kremer and Engel PLC, Santa Monica, CA, for Plaintiff.

Kim Dorothy Ashley, Kevin R. Lussier, Veatch Carlson LLP, Los Angeles, CA, for Defendant.

## STATEMENT OF DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Hon. John F. Walter, United States District Judge

On January 13, 2017, Plaintiff Moroccanoil, Inc. filed a Motion for Partial Summary Judgment (Docket No. 28) seeking an adjudication that Moroccanoil Treatment Products sold by Defendant Perfumes World Com, Inc. ("Perfumes World Treatments") infringe Moroccanoil, Inc.'s trademarks because they materially differ from the Moroccanoil Treatment Products authorized by Moroccanoil, Inc. for sale in the United States ("U.S. Moroccanoil Treatments"). On January 13, 2017, Defendant Perfumes World Com, Inc. ("Perfumes World") filed a Motion for Summary Judgment or, in the Alternative, for Summary Adjudication ("Motion for Summary Judgment") seeking an adjudication that it is not liable for infringing Moroccanoil, Inc.'s trademarks. Having considered the parties' written submissions, the Court **GRANTS** Moroccanoil, Inc.'s Motion for Partial Summary Judgment and **DENIES** Perfumes World's Motion for Summary Judgment.

### FACTUAL BACKGROUND

1. Since 2007, Moroccanoil has distributed a product known as Moroccanoil Treatment, a hair care product featuring argan oil. (Combined Statement of Facts ["CSF"] 8) All Moroccanoil Treatment products bear one or more trademarks, including: (a) the word "Moroccanoil"— United States Patent and Trademark Office ("USPTO") Registration No. 3,478,807; (b) "M Moroccanoil Design"—with the word Moroccanoil in white vertical lettering next to the letter M in copper orange on a turquoise blue background, USPTO Registration No. 3,684,910 ("Vertical Design Mark"); and (c) "M Moroccanoil Design"—with the word Moroccanoil in white horizontal lettering through the letter M in copper orange on a turquoise blue background, USPTO Registration No. 3,684,909 ("Horizontal Design Mark") (collectively, the "Moroccanoil Trademarks"). Moroccanoil, Inc. is the exclusive owner of the Moroccanoil Trademarks. (CSF 3–5, 11) The Moroccanoil Trademarks were registered on September 22, 2009, and a decla-

ration of incontestability for each of the trademarks has been filed with the USPTO. (CSF 9) The Moroccanoil Trademarks are incontestable, valid and enforceable. (CSF 6, 9) *See Brookfield Commc'n, Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1046–47 n.10 (9th Cir. 1999).

2. Moroccanoil Treatment and other Moroccanoil products have been featured in widely circulated magazines, such as *Elle, Harper's Bazaar, People,* and *Marie Claire,* and online beauty publications, and the Moroccanoil brand has received over six billion "impressions" in print and online media since 2014 alone. (CSF 16, 21) Since 2007, Moroccanoil has invested millions of dollars in advertising and marketing for its products and generated millions of dollars and units of sales. (CSF 19, 22–25)

### Distribution and Packaging of the Moroccanoil Treatment Products

3. Moroccanoil, Inc. is the exclusive master distributor of all Moroccanoil products in the United States. (CSF 2, 38)

4. Moroccanoil Israel Ltd. ("Moroccanoil Israel"), a separate entity from Moroccanoil, Inc., manufactures all Moroccanoil Treatments at its plant in Israel. (CSF 12–13, 29) Moroccanoil Israel sells Moroccanoil Treatments to authorized distributors for resale in approximately 70 countries worldwide, including to Moroccanoil, Inc. for resale in the United States. (CSF 29) Each Moroccanoil Treatment manufactured by Moroccanoil Israel is designated for sale in a particular country. (CSF 30–31) For both the inner packaging (the bottle) and the outer packaging (the cardboard box containing the bottle) of Moroccanoil Treatment, Moroccanoil Israel uses specially prepared labeling with specific language combinations, symbols, layouts, product instructions and information, and identification and contact information for the responsible party or distributor for that country. (CSF 30) This country-specific packaging is specifically designed to comply with each country's regulations and to appeal to and best serve the needs and preferences of consumers in each country. (CSF 30–31)

5. Moroccanoil, Inc. only distributes Moroccanoil Treatment in the United States with packaging designed for sale in the United States. (CSF 28, 35) All of the inner packaging and outer packaging of the U.S. Moroccanoil Treatments include particular features intended to comply with federal regulations and to provide useful information and appeal to consumers in the United States. (CSF 36–37, 39–51)

### Perfumes World's Sale of Non–U.S. Moroccanoil Treatment Products

6. Defendant Perfumes World Com, Inc. ("Perfumes World") sells health and beauty products online through its own website and through other retail websites. (CSF 52) Perfumes World has never been authorized to sell or distribute any Moroccanoil products in the United States. (CSF 53)

7. From November 2012 until October 2016, Perfumes World sold Moroccanoil products including Moroccanoil Treatment, to United States consumers on eBay, Groupon, and Perfumes World's own websites. (CSF 54–58, 63, 68, 73, 78)

8. Representatives of Moroccanoil, Inc. purchased Perfumes World Treatments sold online through Groupon, eBay, and Perfumes World's website, receiving shipments of the products to California. (CSF 57, 58, 63, 68, 73, 78) All of the Perfumes World Treatments purchased bear the Moroccanoil Trademarks (CSF 62, 67, 72, 77, 82), but the packaging and labeling of each of the Perfumes World Treatments differ from U.S. Moroccanoil Treatments in several respects, as described further

below. (CSF 57–58, 61, 63, 66, 68, 71, 73, 76, 78, 81, 83–137)

## LEGAL STANDARDS AND DISCUSSION

■ 9. The elements of trademark infringement are (1) ownership of valid trademark rights and (2) use by another in a manner that is likely to confuse United States consumers. *Comedy III Prods., Inc. v. New Line Cinema,* 200 F.3d 593, 594 (9th Cir. 2000). The likelihood of confusion element of trademark infringement may be resolved as a matter of law when there are no disputes of material fact and the evidence permits only one conclusion. *Hokto Kinoko Co. v. Concord Farms, Inc.,* 810 F.Supp.2d 1013, 1029 (C.D. Cal. 2011), *citing Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440, 443–44 (9th Cir. 1980).

■ 10. The present case involves Perfumes World's sale of gray market Moroccanoil products, *i.e.* products which may be authorized by other Moroccanoil entities for sale in other countries but are not authorized for sale in the United States by Moroccanoil, Inc. Even where goods bearing a United States trademark are authorized for sale in another country, a defendant who sells those goods in the United States is liable for trademark infringement if the goods are materially different than those authorized by the trademark owner for sale in the United States. *See, e.g., Hokto,* 810 F.Supp.2d at 1024; *PepsiCo, Inc. v. Reyes,* 70 F.Supp.2d 1057, 1059 (C.D. Cal. 1999). Materially different imported goods are not "genuine" and are not subject to the first sale doctrine. *See Hokto Kinoko Co. v. Concord Farms, Inc.,* 738 F.3d 1085, 1094–95 (9th Cir. 2013).

■ 11. The threshold for what constitutes a "material" difference "is always quite low." *PepsiCo,* 70 F.Supp.2d at 1059, *quoting Nestle,* 982 F.2d at 641; *see also Zino Davidoff SA v. CVS Corp.,* 571 F.3d 238, 246 (2d Cir. 2009) (a showing of materiality requires "no more than a slight difference which consumers would likely deem relevant when considering a purchase of the product"). "To be a genuine product in the U.S., it must be identical to authorized products sold in the U.S. and not contain material differences with the authorized product." *Hokto,* 810 F.Supp.2d at 1028 (emphasis added), *citing Monte Carlo Shirt, Inc. v. Daewoo Intern. (America) Corp.,* 707 F.2d 1054, 1057 (9th Cir. 1983); *see also PepsiCo,* 70 F.Supp.2d at 1059 ("the existence of any difference" between the two products that would be relevant to consumers creates a presumption of consumer confusion). There is a strong likelihood of consumer confusion where authorized goods and gray market goods bear the same trademarks but have material differences. *PepsiCo,* 70 F.Supp.2d at 1059; *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 641 (1st Cir. 1992).

■ 12. Material differences in labeling or packaging alone are sufficiently likely to cause consumer confusion. *See, e.g., Helene Curtis v. Nat'l Wholesale Liquidators, Inc.,* 890 F.Supp. 152, 159 (S.D.N.Y. 1995) ("Plaintiff has met its burden of proof in demonstrating that these labeling differences are material, and would likely result in consumer confusion"); *Nestle,* 982 F.2d at 643 (finding differences in packaging to be material, reasoning that "[a]lthough the district court dismissed the differences in packaging as 'subtle,' [citation omitted] subtle differences are, as we have said, precisely the type that heighten the presumption of customer confusion"); *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.,* 753 F.Supp. 1240, 1247 (D.N.J. 1991) ("there exists the likelihood of and potential for significant consumer ... confusion through the sale of a[n imported] ... product that does not

conform to the same labeling"), *aff'd*, 935 F.2d 1281 (3d Cir. 1991); *Dan–Foam A/S v. Brand Named Beds, LLC,* 500 F.Supp.2d 296, 313–14 (S.D.N.Y. 2007) ("Differences in product packaging have been found to constitute material differences ...").

### The Perfumes World Treatments Infringe the Moroccanoil Trademarks

■ 13. The Perfumes World Treatments have multiple differences in packaging and labeling from the U.S. Moroccanoil Treatments, each of which is material:

a. Unlike U.S. Moroccanoil Treatment products, the Perfumes World Treatments do not state the net volume of the products in fluid ounces on the outer packaging. (*See, e.g.,* CSF 45); *see Helene Curtis v. Nat'l Wholesale Liquidators, Inc.,* 890 F.Supp. 152, 159 (S.D.N.Y. 1995) ("It is material to consumers that products state measurement in units that consumers understand.").

b. Unlike U.S. Moroccanoil Treatment products, the Perfumes World Treatments do not identify Moroccanoil, Inc. as the distributor and provide its Los Angeles, California address in English. (CSF 46, 47) Identification of a foreign responsible party rather than the correct responsible party located in the United States is considered a material difference. *Hokto,* 810 F.Supp.2d at 1026–27.

c. Unlike U.S. Moroccanoil Treatment products, the Perfumes World Treatments do not include product warnings in English on both the inner and outer packaging. (*See, e.g.,* CSF 84–86); *see Johnson & Johnson Consumer Cos., Inc. v. Aini,* 540 F.Supp.2d 374, 387 (E.D.N.Y. 2008) (differences in product warnings on plaintiff's packaging and defendant's packaging held material).

d. The backs of the inner and outer packaging of U.S. Moroccanoil Treatment include product descriptions, instructions for use of the product, and product warnings in English, Spanish and/or French languages, with English always used as the primary (top-most) language. (CSF 39–41)

(1) The backs of the outer packaging of the Perfumes World Treatments have product descriptions, instructions for use of the product and product warnings in Hebrew. (CSF 84, 88, 92, 96, 100)

(2) The backs of the inner packaging of the Perfumes World Treatments have product descriptions, instructions for use of the product and product warnings in Japanese. (CSF 85, 89, 93, 97, 101)

(3) The Perfumes World Treatments have mismatched inner and outer packaging: The outer packaging of the Perfumes World Treatment has Hebrew while the inner packaging has Japanese writing. (CSF 83–102)

*See Nestle,* 982 F.2d at 643 (aesthetic differences between goods are material where they may confuse consumers and harm the trademark holder's goodwill).

e. U.S. Moroccanoil Treatments display a U.S. toll-free customer service telephone number, but the Perfumes World Treatments instead display only a non-toll free international telephone number. (CSF 48, 49, 103, 107–108, 112–113, 117–118, 122–123, 127); *see Hokto,* 810 F.Supp.2d at 1027 (customer support information in Japanese, rather than English, considered a material difference).

f. U.S. Moroccanoil Treatments state the shelf-life of the product with a Period After Opening symbol in English on both the inner and outer packaging. (CSF 50–51) The inner packaging of the Perfumes World Treatments do not state the shelf-life of the products in English, but instead display a Japanese symbol where the Period After Opening symbol would normally appear on the inner packaging of U.S. Moroccanoil Treatment. (CSF 133–137);

*see Abbott Lab. v. Adelphia Supply USA,* No. 15-CV-5826 (CBA) (MDG), 2015 WL 10906060, at *6 (S.D.N.Y. Nov. 6, 2015) (packaging with foreign "unexplained and unfamiliar symbols" considered material to consumers).

14. In addition, the Perfumes World Treatments are materially different in that, unlike the U.S. Moroccanoil Treatments, the Perfumes World Treatments do not comply with each of the following FDA labeling regulations:

a. The Perfumes World Treatments do not include the net volume of the products in fluid ounces on the outer packaging. [21 C.F.R. 701.13]

b. The Perfumes World Treatments do not identify the place of business of the manufacturer, packer, or distributor of the product in English on both the inner and outer packaging. [21 U.S.C. 362; 21 C.F.R. 701.2(b)(1)]

c. The Perfumes World Treatments do not include product warnings in English on both the inner and outer packaging [21 C.F.R. 740.2; 21 C.F.R. 701.2(b)(1) ].

d. Courts have repeatedly found such violations of federal regulations to be material. *See, e.g., Helene Curtis,* 890 F.Supp. at 159; *Ferrero,* 753 F.Supp. at 1244, *aff'd,* 935 F.2d 1281; *see also Novartis Animal Health US, Inc. v. Abbeyvet Exp. Ltd.,* 409 F.Supp.2d 264, 267 n.3 (S.D.N.Y. 2005).

**The *Sleekcraft* Factors Favor a Finding of Likely Confusion**

 15. The Ninth Circuit has articulated an eight factor test (the "*Sleekcraft* factors") to guide the determination of a likelihood of confusion, *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir. 1979) ("*Sleekcraft*"). In the case at hand, the Sleekcraft factors weigh in favor of finding consumer confusion:

a. **Similarity of the Marks and Proximity of the Goods:** The marks and goods at issue in this case are identical, and so these factors strongly favor a finding of confusion. (*See* CSF 3–5, 17, 62, 67, 72, 77, 82); *Hokto,* 810 F.Supp.2d at 1029.

b. **Strength of the Marks:** Moroccanoil's marks appear to be suggestive because a consumer must make a "mental leap" to understand the term "Moroccanoil" refers to hair and body products that contain argan oil. *Brookfield Commc'ns,* 174 F.3d at 1058. Moroccanoil has also presented evidence that its marks are commercially strong. This factor favors Moroccanoil, Inc.

c. **Evidence of Actual Confusion:** Evidence of actual confusion is not required, as it may be difficult to present evidence of actual consumer confusion. *See Perfumebay.com Inc. v. eBay, Inc.,* 506 F.3d 1165, 1176 (9th Cir. 2007) (lack of "actual confusion is not dispositive against a trademark plaintiff ... difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy"). The other factors weigh strongly in favor of finding consumer confusion, so the absence of evidence of actual consumer confusion is not significant. *See Hokto,* 810 F.Supp.2d at 1030 (finding likelihood of consumer confusion despite no evidence of actual consumer confusion). Nonetheless, Moroccanoil has presented evidence that consumers who purchased Non–U.S. Moroccanoil products (*i.e.* Moroccanoil products intended for sale in other countries) from third parties online on Amazon.com have expressed their frustration in product reviews that the Moroccanoil products they received did not have packaging in English. (CSF 138–144) Thus, verbatim comments of consumers who purchased similar Non–U.S. Moroccanoil products are indicative of actual confusion arising from the Perfumes World Treatments, and this factor favors Moroccanoil, Inc.

 d. **Marketing Channels Used:** "Convergent marketing channels increase

the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. In determining whether marketing channels converge, courts consider, among other things, "whether the parties' customer bases overlap." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014). "Marketing channels can converge even when different submarkets are involved so long as 'the general class of ... purchasers exposed to the products overlap." *Id.* (quoting *Sleekcraft*, 599 F.2d at 353). Notwithstanding that the parties' channels are not identical, the "similarities between the products suggest an overlapping general class of consumers." *See Pom Wonderful*, 775 F.3d at 1131 ("absence of identical channels does not, by itself, undermine [plaintiff's] likelihood of proving that the marketing channels converge."); *Sleekcraft*, 599 F.2d at 353 (finding convergent marketing channels where both companies sold boats to authorized dealers in diverse localities). This factor favors Moroccanoil, Inc.

■ e. **Degree of Care Likely to Be Exercised by Consumers:** Courts generally assume that consumers will exercise less care when purchasing inexpensive products, making confusion more likely. *Brookfield Commc'ns*, 174 F.3d at 1060; *see Dep Corp. v. Opti–Ray, Inc.*, 768 F.Supp. 710, 716 (C.D. Cal. 1991) (low degree of care for hair care products). "Low consumer care, in turn, increases the likelihood of confusion." *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d at 1028. This factor favors Moroccanoil, Inc.

■ f. **Perfumes World's Intent in Selecting the Marks:** Evidence of intent or bad faith is not necessary in showing a likelihood of confusion. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1132 n.12 (9th Cir. 1998). However, in the present case, Perfumes World's intent can be inferred by the fact that the Perfumes World Treatments bear marks identical to the Moroccanoil Trademarks used on the

U.S. Moroccanoil Treatments. *Hokto*, 810 F.Supp.2d at 1031 ("the fact that the mushroom packages carry the same Hokto Marks permits an inference of intent"). This factor therefore favors Moroccanoil, Inc.

g. **Likelihood of Expansion of the Product Lines:** This factor is less important in cases such as this, where the products at issue already directly compete with each other. *See Hokto*, 810 F.Supp.2d at 1031.

## California Statutory Unfair Competition Claim

16. California Business and Professions Code § 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Moroccanoil, Inc.'s Lanham Act claims, on which the section 17200 claim is based, arise from Perfumes World's sale and delivery of Perfumes World Treatments into California. *W. Corp. v. Super. Ct.*, 116 Cal.App.4th 1167, 1177, 11 Cal.Rptr.3d 145 (2004).

17. As a competitor to Perfumes World and owner of the trademarks infringed by Perfumes World, Moroccanoil, Inc. has standing to assert its section 17200 claim. *Airwair Int'l Ltd. v. Vans, Inc.*, 2013 WL 3786309, at *8 (N.D. Cal. July 17, 2013) (damages from loss of goodwill from trademark infringement sufficient to establish standing for section 17200 claim).

■ 18. "[S]tate common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). Given that Moroccanoil, Inc. has established the elements of its Lanham Act infringement claim, Moroccanoil, Inc. has therefore established liability under its section 17200 claim. *See Century*

*21 Real Estate Corp. v. Magee*, 1991 WL 318797 at *7–8 (C.D. Cal. 1991) (evidence sufficient to establish trademark infringement elements entitles plaintiff to summary judgment on section 17200 claims).

19. Perfumes World has not met its burden to show that it has permanently ceased the infringing behavior and will not resume it. *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff Moroccanoil, Inc.'s Motion for Partial Summary Judgment is **GRANTED** and Perfumes World's Motion for Summary Judgment is **DENIED**.