**MOROCCANOIL, INC., Plaintiff,**

v.

**GROUPON, INC., et al., Defendants.**

Case No. CV 15–08078–AB (MRWx)

United States District Court, C.D. California.

Signed 10/05/2017

Evan Pitchford, Eric Steven Engel, Heather Lynn Laird, Conkle Kremer and Engel PLC, Santa Monica, CA, for Plaintiff.

Laura L. Chapman, Toni Qiu, Sheppard Mullin Richter and Hampton LLP, San Francisco, CA, Deborah Ann Gubernick, J. Randall Boyer, Scott P. Shaw, Call and Jensen PC, Newport Beach, CA, Rom

Bar–Nissim, Fox Rothschild LLP, Shanen Reid Prout, Law Office of Shanen R. Prout, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOROCCANOIL'S MOTION, and DENYING GROUPON'S MOTION

HONORABLE ANDRÉ BIROTTE JR., UNITED STATES DISTRICT COURT JUDGE

Before the Court are Motions for Partial Summary Judgment filed by Plaintiff Moroccanoil, Inc. ("Moroccanoil") and Defendant Groupon, Inc. ("Groupon"). (Dkt. Nos. 168, 175.) Oppositions and replies, along with voluminous evidence, were filed with both Motions. The Court heard oral argument on September 22, 2017. For the following reasons the Court **GRANTS in part and DENIES in part** Moroccanoil's Motion, and **DENIES** Groupon's Motion.

## I. BACKGROUND

Moroccanoil is the exclusive United States distributor of a hair oil referred to herein as Moroccanoil Treatment, and owns several trademarks it uses in connection with marketing its Moroccanoil Treatment. *See* First Amended Complaint ("FAC") ¶¶ 3, 4, 15. Moroccanoil alleges that between August and October 2015, Groupon sold, through its e-commerce marketplace, counterfeit Moroccanoil Treatment in packaging bearing Moroccanoil's trademarks and that used trade dress nearly identical to Moroccanoil's trade dress. FAC ¶¶ 21–22. Based on these allegations, Moroccanoil sued Groupon for (1) federal trademark infringement and counterfeiting, 15 U.S.C. § 1114; (2) federal false designation of original and unfair competition, 15 U.S.C. § 1125(a); (3) unfair competition and false advertising, Cal. Bus. & Prof. Code §§ 17200, 17500; and (4) common law unfair competition and conspiracy.

Moroccanoil also sued the individuals and business who supplied the counterfeit products. Those claims were all resolved by consent judgments and permanent injunctions.

Moroccanoil now moves for summary adjudication that "Groupon infringed Moroccanoil's trademark rights under 15 U.S.C. §§ 1114 and 1125(a) and violated Cal. Bus. & Prof. Code § 17200 *et seq.*, (1) by selling non-genuine Moroccanoil Treatment products bearing those trademarks, which products are materially different than the Moroccanoil Treatment products that are authorized by Moroccanoil, Inc. for sale in the United States, (2) by knowingly selling such materially different products, and (3) by selling Moroccanoil Treatment products that are counterfeit." Mot. 7:10–18. Thus, Moroccanoil is moving for summary adjudication as to Groupon's liability for its first three causes of action.

Groupon moves for summary adjudication as to Moroccanoil's claims for monetary relief on numerous grounds and for injunctive relief on the ground that it is moot.

## II. LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party will have the burden of proof at trial,

the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id.* The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir. 1989).

The two motions are focused on different issues so the Court will address them separately.

### III. MOROCCANOIL'S MOTION IS GRANTED IN PART AND DENIED IN PART.

#### A. Undisputed Facts

After reviewing Moroccanoil's Statement of Undisputed Facts, Groupon's Statement of Genuine Issues, and Moroccanoil's Response thereto, the Court finds that the following facts are not genuinely disputed.

Plaintiff Moroccanoil owns three Moroccanoil Trademarks that it uses in connection with its Moroccanoil brand hair and body care products, including a Moroccanoil Treatment hair care product featuring argan oil. (SUF 1–8.) All Moroccanoil Treatments bear at least one of the Moroccanoil Trademarks on the inner (bottle) and outer (box) packaging. (SUF 11, 28.) Moroccanoil Israel manufactures all of Moroccanoil's Moroccanoil Treatments for retail in 70 countries worldwide. (SUF 29–30.) Moroccanoil Israel customizes the packaging for each country by using specific language combinations, symbols, layouts, product instructions and information, and identification and contact information for the distributor to comply with each country's regulations and to appeal to consumers there. (SUF 31.)

Moroccanoil Treatment products authorized by Moroccanoil for sale in the United States ("U.S. Moroccanoil Treatment") are packaged in bottles and boxes specifically designed for use in the United States, and to comply with federal regulations and appeal to United States consumers. (SUF 35–37.) In particular, U.S. Moroccanoil Treatment products are in packaging with English as the primary language and either Spanish and/or French as the secondary language; they always express the net volume of their contents in fluid ounces to comply with U.S. law; the packaging identifies Moroccanoil as the distributor by name and address in California; include a toll-free U.S. number for consumers to contact Moroccanoil; and they bear a period-after-opening symbol to show the shelf-life of an opened product. (SUF 39, 42, 44, 46, 48.) All authentic Moroccanoil Treatments also include a matrix code on the inner packaging that is viewable through the outer packaging and scannable with a smartphone. (SUF 118.) Each unit has a unique matrix code that yields a unique alphanumeric sequence when scanned. (SUF 119, 120.)

Groupon is an online merchant that acquires products from third parties and resells them to consumers in the U.S. and elsewhere, including by using a "drop-

ship" model whereby Groupon never takes possession of the good but instead he third-party ships them to the consumer. (SUF 50.) From August 21, 2015 until October 14, 2015, Groupon sold purported Moroccanoil Treatment products ("Groupon Treatment") to customers in the U.S. (SUF 52–54.) On August 22, 31, and September 9, Moroccanoil purchased three units of the Groupon Treatment, all of which were in packaging that bore Moroccanoil's Trademarks. (SUF 55–70, 116.) Each of the Groupon Treatment Moroccanoil purchased from Groupon had the same matrix code, thus indicating they are counterfeits. (SUF 122, 123.) Moroccanoil also had a forensic chemical laboratory test the contents of each of the three Groupon Treatments it purchased and determined they were not authentic. (SUF 129.)

The packaging of the Groupon Treatments Moroccanoil purchased also differed from the U.S. Moroccanoil Treatments in several ways, including: two of them had Spanish, not English, as the primary language and the other had Hebrew as the secondary language, which U.S. Moroccanoil Treatments never have (SUF 75–86); they did not display a toll-free United States customer service number, identify Moroccanoil as the distributor, and/or or provide distributor information in English (SUF 87–98); they did not state the net volume of the contents in fluid ounces (SUF 103–105); one did not include the period-after-opening symbol (SUF 107); and one includes a different ingredients in its ingredient list (SUF 109).

Groupon received a sample of a Groupon Treatment ("Sample Groupon Treatment") on September 16, 2015 and its packaging includes Moroccanoil Trademarks but its packaging differs from authentic Moroccanoil Treatments in most of the same ways as the three items Moroccanoil purchased. (SUF 71, 74, 77– 99–

102; 106; 108; 110; 112.) The Sample Groupon Treatment was also leaking. Upon receipt of the Sample Groupon Treatment, Groupon was surprised that there was a language other than English on the packaging. (SUF 113.) Groupon received complaints from purchasers of the Groupon Treatment concerning, among other things, the authenticity of the item and noting that the packaging included unfamiliar languages. (SUF 115, Ex. 541.)

## B. Elements of Trademark Infringement

■ Moroccanoil seeks summary adjudication as to Groupon's liability for federal trademark infringement and unfair competition, and for unfair competition under § 17200 and California common law.[1] "When trademark and unfair competition claims are based on the same infringing conduct, courts apply the same analysis to both claims." *Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*, 772 F.Supp.2d 1155, 1167 (C.D. Cal. 2009) (applying same analysis to claims under federal trademark law and parallel California law); *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir.1994) ("actions pursuant to … § 17200 are 'substantially congruent' to claims made under the Lanham Act"); *Philip Morris USA Inc. v. Liu*, 489 F.Supp.2d 1119, 1123 (C.D. Cal. 2007) ("Proof of trademark infringement under the Lanham Act independently constitutes unfair competition under California law."). Therefore, the same analysis governs all of the claims Moroccanoil moves on.

■ "To succeed on a claim for trademark infringement or unfair competition, [a] party must establish: (1) ownership of the trademark at issue; (2) use by defendant, without authorization, of a copy, reproduction, counterfeit or colorable imitation of the moving party's mark in con-

1. Moroccanoil does not seek summary adjudication of its conspiracy claim.

nection with the sale, distribution or advertising of goods or services; and (3) that defendant's use of the mark is likely to cause confusion, or to cause mistake or to deceive." *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F.Supp.2d 1206, 1210 (C.D. Cal. 1998) (internal quotations and citations omitted)).

Morrocanoil relies on two theories to establish that Groupon infringed its trademarks: a counterfeiting theory and a "material difference" theory. The Court will address them in turn.

### C. The Court GRANTS Moroccanoil's Motion for Summary Adjudication as to Liability on its Counterfeiting Theory of Infringement

Counterfeiting is a form of trademark infringement so the elements are the same as though set forth above.

Groupon concedes that Moroccanoil owns the Moroccanoil Trademarks in issue.

■ It is also undisputed that the Groupon Treatments are counterfeit. Indeed, Moroccanoil has shown that all authentic Moroccanoil Treatment products bear a unique, scannable matrix code on each unit, and that the Groupon Treatments bore non-unique matrix codes. Moroccanoil also established that the contents of the Groupon Treatments were distinctly different from the contents of authentic Moroccanoil Treatment. Groupon's sole argument is that because Morrocanoil purchased and tested only three of the Groupon Treatments, it can establish counterfeiting only as to those three items. This argument is meritless. Taken to its logical conclusion, it would require trademark owners to purchase all (or at least a large quantity) of an infringer's infringing goods to establish its claim. Groupon points to no cases so holding, and in fact, many cases have found that a sampling of infringing goods is sufficient to establish liability. *See, e.g., Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F.Supp.3d 137, 151 (E.D.N.Y. 2016) (summary adjudication of liability for infringement based on one box of 5–Hour Energy purchased for testing out of over 2 million units sold); *Microsoft Corp. v. Buy Cheap Software*, 2016 WL 7444627 at *2 (C.D. Cal. 2016) ("Microsoft's infringement claim is not limited to the four test purchases. Plainly, the test purchases are but examples of the general pattern of unauthorized conduct," court rejects defense that "would require Microsoft to buy and test every BCSI product"). Furthermore, Morrocanoil's present motion seeks only to establish liability for infringement, not the exact number of counterfeits that Groupon sold—an issue that need not be resolved until damages are addressed.

Finally, likelihood of confusion has been established. Where, as here, the "case[ ] involve[ed] counterfeit marks, it is unnecessary to perform the step-by-step [8–element *Sleekcraft* ] examination ... because counterfeit marks are inherently confusing." *Phillip Morris USA v. Shalabi*, 352 F.Supp.2d 1067, 1073 (C.D. Cal. 2004); *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion"). Morrocanoil has nevertheless presented a thorough and convincing analysis of the *Sleekcraft* factors, which Groupon does not rebut, and with which the Court concurs.

■ Moroccanoil has also presented evidence of actual confusion: Groupon's customers' complaints [2] reveal that they purchased the Groupon Treatment believing it was genuine U.S. Moroccanoil Treatment. "Where there is evidence of actual confusion, it is regarded as extremely significant

**2.** The Court overrules Groupon's evidentiary objections to the customer complaints.

to the issue of likelihood of confusion." *Steinway & Sons v. Robert Demars & Friends*, 1981 WL 40530 at \*14 (C.D. Cal. 1981). Indeed, Groupon's own defense to damages—that it believed the Groupon Treatments were authentic based in part on the packaging—is itself also evidence of actual confusion. Groupon faults Moroccanoil for not conducting a consumer survey to establish confusion, but surveys are not necessary to establish this element. *See McCarthy on Trademarks*, § 32:195 (2017) ("while survey evidence has become more common, that does not mean that it is needed, required, or introduced in the majority of cases"). Groupon has not raised a triable issue of fact as to likelihood of confusion.

For the foregoing reasons, Moroccanoil has established that Groupon is liable for trademark infringement and unfair competition because it sold counterfeit Moroccanoil Treatments.

### D. The Court DENIES Moroccanoil's Motion as to its Material Difference Theory.

■ The material difference theory is somewhat more obscure: it applies to gray market goods, that is, "goods that are legitimately produced and sold abroad under a particular trademark, and then imported and sold in the United States in competition with the U.S. trademark holder's products." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1092 (9th Cir. 2013). The familiar consumer-confusion analysis applies to trademark infringement claims concerning gray market goods. *Id.* However, a seller of gray market goods that are "genuine" cannot be liable for infringement. *Id.* " 'Genuine,' in the trademark context, is a term of art: a gray-market good is 'genuine' only if it does not materially differ from the U.S. trademark owner's product." *Id.* at 1093.

(citing McCarthy on Trademarks § 29:51.75 (4th ed. 2005) ("[I]f there are material differences between the gray market imports and the authorized imports, then the gray market imports are not 'genuine' goods and can create a likelihood of confusion.")); *see also Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 638 (1st Cir.1992) ("It follows that the Venezuelan chocolates purveyed by Casa Helvetia were not 'genuine' . . . if they (a) were not authorized for sale in the United States and (b) differed materially from the authorized (Italian-made) version."). "Material differences in labeling or packaging alone are sufficiently likely to cause consumer confusion." *Moroccanoil, Inc. v. Perfumes World Com, Inc.*, 234 F.Supp.3d 1026, 1030 (C.D. Cal. 2017) (citing cases).

Here, the undisputed material facts establish that the Groupon Treatments bore numerous material differences from U.S. Moroccanoil Treatments, including that the Groupon Treatments had Spanish as a primary language and Hebrew as a secondary language, did not show the volume in fluid ounces, lacked information about the distributor, lacked the period-after-opening symbol, included different ingredients in the ingredients lists, and the product itself had a different composition and is therefore counterfeit. These are all material differences. But this last fact—that the Groupon Treatments were *counterfeit*—also forecloses the "material difference" theory because this theory applies only to gray market goods, which are, by definition, goods legitimately produced by the trademark owner, meaning goods that are not counterfeit. Moroccanoil has not pointed to any cases applying this theory to counterfeit goods. Because it does not appear that this theory applies to the facts of this case, the Court declines to grant summary adjudication on this theory.[3]

---

**3.** Moroccanoil also seeks a determination that

Groupon knew it was selling infringing goods,

## IV. GROUPON'S MOTION IS DE-NIED

Groupon seeks summary adjudication of numerous remedies-related issues. Having considered all of the briefing and upon review of the evidentiary record, the Court finds that material issues of triable fact preclude summary adjudication of any of these issues. The Court addresses Groupon's arguments briefly in turn.[4]

Groupon first contends that, for many reasons, Moroccanoil cannot show it is entitled to any of the monetary relief it seeks, including actual damages, Groupon's profits, or statutory damages. None of these arguments has merit.

Groupon argues that equity bars any monetary recovery because. Moroccanoil failed to mitigate its damages because it did not immediately alert Groupon of the suspected infringement, either by phone, email, or an online form on the Groupon website for this purpose. Groupon contends that had Moroccanoil notified it of the problem, it would have immediately stopped selling the Groupon Treatments, thereby avoiding harm to Moroccanoil. But Moroccanoil itself needed time to investigate, and it did so promptly by ordering a sample the day after Groupon's sale started; Moroccanoil filed suit only six weeks later. Nothing about Moroccanoil's conduct calls on equity to intervene and bar it from recovering damages.

■ Groupon argues that disgorgement of profits is not available because there is no evidence of willfulness and because it did not make a profit. But there is sufficient evidence upon which to base a finding of willfulness. For example, Groupon's buyer admitted that when he saw other languages besides English on the Sample Groupon Treatment's packaging he received on September 15, he complained to the supplier. Furthermore, that package was leaking, which is arguably a red flag for a counterfeit. And, Groupon received numerous customer complaints challenging the authenticity of the Groupon Treatments, yet continued to sell them. Such evidence creates a triable issue as to willfulness. And, whether Groupon made any profit is also a triable issue. For one thing, Groupon's undisputed fact 24, which purports to establish its lacks of profits, is a string of numerous of facts, picked from disparate evidence that is not readily verifiable. Not surprisingly, then, Moroccanoil's response to this fact effectively raises a triable issue by challenging the accuracy of Groupon's calculations. Whether Groupon made any profits is therefore a triable issue.

■ Groupon also argues that treble damages for counterfeiting are not available because there is no evidence that it knew or was willfully blind to the counterfeit products. Under 15 U.S.C. § 117(b), unless there are extenuating circumstances, a court must award treble damages for intentionally using a counterfeit mark. The same evidence cited above that creates a triable issue as to willfulness as relevant to disgorgement also creates a triable issue as to Groupon's knowledge of,

---

but this argument applies only to its theory that Moroccanoil sold materially different gray market goods; Moroccanoil does not argue, in this motion, that Groupon knew it was selling *counterfeit* goods.

4. Groupon also asks the Court to take judicial notice of thousands of pages of court records consisting of docket sheets, complaints, and judgments from some 82 other trademark in-fringement actions Moroccanoil has filed. *See* Dkt. No. 178. The request is resolutely DE-NIED. This material is not relevant to any of the issues before the Court. Even if these documents are marginally relevant, the Court resources it would take to review them are all out of proportion to any value they might add. It should go without saying that the Court will not squander its resources on such endeavors.

or willful blindness to, the counterfeit nature of the Groupon Treatments. *See, e.g.,* *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 109 (2d Cir. 2010) (willful blindness requires that defendant have a "reason to suspect" that counterfeit goods are being sold and "intentionally shield[ing] itself from discovering ... the particular infringing transactions"); *Hard Rock Cafe Licensing Corp. v. Concession Servs.*, 955 F.2d 1143, 1149 (7th Cir. 1992) ("To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate."); *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice."). For the same reasons, the Court cannot find that the "extenuating circumstances" exception to treble damages applies here.

 Groupon also argues that Moroccanoil cannot recover punitive damages under its common law unfair competition claim because it cannot show that Groupon acted with malice, oppression, or fraud. *Binder v. Disability Grp., Inc.*, 772 F.Supp.2d 1172, 1184 (C.D. Cal. 2011) (citing Cal. Civ. Code § 3294). However, "conduct done willfully, intentionally and in reckless disregard of its possible injurious consequences," *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1024 (9th Cir. 1985) (applying standard to unfair competition claim), can satisfy this standard, and, as discussed above, whether Groupon acted willfully is a triable issue.

 Groupon also argues that attorneys' fees are not available under 15 U.S.C. § 1117(a) because this case is not "exceptional," or under 15 U.S.C. § 1117(b) because it did not sell counterfeit goods "intentional[ly]" or "knowing[ly]." Again, the Court rejects these arguments. Willful conduct can support an award of fees under either statute, and as

discussed above, whether Groupon acted willfully is a triable issue. In short, all of these issues concerning Groupon's state of mind are highly fact-intensive, and there is sufficient evidence to create a triable issue.

Finally, Groupon argues that the claim for injunctive relief is moot because it stopped selling the Groupon Treatments as soon as it learned of the infringement through this lawsuit. Considering all of the circumstances above—including Groupon's prior infringements of the marks, the triable issues as to its willfulness and intent—Groupon has simply not established that an injunction will not be necessary.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Moroccanoil's Motion for Summary Adjudication that Groupon infringed its marks by selling counterfeit goods, and **DENIES** the Motion that Groupon infringed by selling materially different gray market goods.

The Court **DENIES** Groupon's Motion in its entirety.

**IT IS SO ORDERED.**